08-430 on behalf of the L1, Ms. Kathleen Hamel on behalf of the state, Mr. J. Paul Hoffman. Sorry for the delay this morning. We've been discussing cases and this is our last case so we won't stop anyone else, but Ms. Hamel, please. Good morning, Your Honors. I'm Kathleen Hamel from the Office of the State Appellate Defendant. Good morning, Counsel. I'm representing the defendant appellate, Raymond Ann Abernathy. The United States Supreme Court has recognized that the right to retain counsel of one's choice is the root meaning of the Sixth Amendment guarantee of the accused's rights to the existence of counsel at a criminal trial. While the right to retain counsel is fundamental, it is limited. Courts in Illinois have basically recognized two categories of limitation of cases in which it is limited. One is where the defendant makes a request for counsel that he cannot afford. The other is that the defendant has no right to ask for a continuance for the purpose of seeking new counsel, where it is actually a delay tactic that is designed to thwart the effective administration of justice. Counsel, the threshold question in this matter, was Attorney Fulton, does the record reflect whether or not he was appointed or retained? He was retained. He was retained. Yes. That's not in dispute. I do not believe it was. They never disputed it below. In fact, they never actually discussed this below in this way, but yes. Okay. Is there any issue that when the court, I think based upon what I read, I think it sounds like he's retained too, but is there any issue that when the court delayed making a decision that he kept him on in that retained position, that there might be some issue that he would then be paid by the state? The financial arrangement was never really fleshed out on the record. However, the trial court did say a couple of times, I back would replace an attorney who already has been paid for. And so that leads me to conclude that the financial arrangement, at least the court's understanding of it, must have been that he was paid to represent him throughout this prosecution. And Mr. Fulton never brings the classic argument, my client and I disagree, I have come to a fundamental disagreement, which often is I'm not being paid anymore. No, he doesn't say that, no. Although he did end up saying that at the very end when they were talking about whether or not he should continue to represent the defendant in the case that was running along with this case. Okay. Counsel, did the trial court ever make an inquiry into the financial circumstances of the defendant once he raised the issue that he wanted to discharge? I believe that is the heart of the error that happened here. There never was an inquiry into Mr. Abernathy's financial circumstances. The record, the information that is available on the record certainly indicates that he was an indigent person, 17 years old, a high school dropout living with his parents with no work record to speak of and no assets or liabilities listed in the pre-sentence report. The record shows on January 15th of 08 the defendant was asked to fill out an affidavit of assets and liabilities, but that affidavit does not appear in the record. That's true. That's true. And they never really pursued that in any way, shape, or form. That's where we think the error lies, actually. That there should have been a full inquiry into the defendant's financial circumstances and whether he qualified for the public defender. And if he did, the public defender should have been appointed. This isn't really, this isn't a case where the defendant was acting, you know, trying to get an attorney he couldn't afford. Of course, he could afford the public defender. Everybody can. And it also is not a case where he was trying to delay justice in any way, shape, or form. There's no indication on this record that the defendant was making this request for any reason other than his dissatisfaction with his attorney. And the court itself never presented any sort or expressed any sort of concern about the amount of time that was going by while they tried to deal with the situation. On the contrary, the court continued the court case four times between, I believe it's December 6th and January 15th, to afford the Ebernethys an opportunity to find another attorney. Those continued instances also show that the court had no concern regarding or was not worried about bringing on a new attorney at this stage in the case. You know, perhaps, you know, a court could be concerned about whether or not it would be troublesome or, you know, would cause additional delay to bring on somebody to review the entire trial and, you know, try to get themselves up to speed in order to do a post-trial motion. The judge did not have that concern. He, indeed, you know, indicated had the Ebernethys been able to produce another private lawyer, he would have been amenable with that change. But you would agree that there's some issues that would bear on the inquiry. I mean, you may make the argument that the defendant would have the right to discharge privately retained counsel if he's indigent in favor of the court appointing counsel as a general constitutional principle. Is that without limits? Could the defendant do that on the morning of trial? No. That's right. You know, here, however, we don't have that problem. I think that would fall within the limitation that I mentioned earlier, that if one does make such a request on the morning of trial, it does thwart the effect of administration of justice, and then it's not a reasonable thing. So it is not without limit. But here, we don't have these kind of concerns. As a practical matter, in this case, there was no big hurry to get to sentencing, and that is because the defendant was being prosecuted in another case at the same time, case number 05-CF-3755. That case, he was tried in this one first, but there's little mentions of that case pre-trial and quite a bit after this jury verdict comes down in this case about efforts to negotiate a plea in that case. And it's pretty apparent that the, certainly the state and probably defense counsel as well, were rather hoping to resolve it with a plea and then do a double sentencing hearing in both cases so that, you know, the sentences could be worked out together. It makes sense. It's economical. They, in fact, consistent with that, the sentencing hearing in this case was not even set. The date was not even set until January 15th, 2008, even though the trial ended in July. And then the date that was set, February 29th, they did not do the sentencing that day. Instead, there was just a little talk about the negotiations, the status of the negotiations in the other case. And on March 31st, the day in which the defendant finally was sentenced, the morning session of the court was an attempt to get the defendant to plead guilty. There was a 402 conference, I believe, that morning, but the defendant rejected the offer. And so then finally in the afternoon on that day, they sentenced him. Does the record reflect when the PSI on this case was prepared or was ready? I believe the record reflects it. I can't tell you. I just don't have that fact. I also want to point out that the concern, the cases in which we have that morning of trial request for counsel, there is such a different set of concerns. When you were talking about the pretrial delay and morning of trial delay than there is when we're talking about post-trial matters. There's more flexibility that is possible. The conviction has been obtained, and the parties in the court can be a little more flexible, I think, in trying to schedule. But basically here, you know, again, those sort of concerns were not discussed on the record. The court's comments, which I believe I quote pretty much all of them regarding this in my brief, clearly indicate that his concern, the judge's concern, was that he didn't want to spend public funds hiring an attorney for somebody who, in his view, had a perfectly good attorney. So ultimately, this case is about whether poor people have the same right as do money people, the right to fire an attorney that they just no longer want and to replace that attorney with another. On that point, is there any showing at all that the defendant has to make to be able to do that? Aside from the delay issue. It would be different, obviously, if he was trying to fire a retained counsel and get another retained counsel. But is there any showing at all that has to be made other than an agency, in your opinion? Is there any showing that he wanted to go out of time? The defendant would have to make any reasons advance other than there's a conflict and he wants the PD help. Well, the defendant did make some noises that, you know, he did say a few things about his dissatisfaction with his attorney. They were nonspecific. And we are arguing in this case that this is a crankle situation. We kind of are prohibited from doing so by the Supreme Court's holding in People v. Pecoraro, where actually the court at one point in denying crankle relief to a defendant who had private counsel, the court said, you know, if you don't like your attorney, you should hire a new one. And, you know, the thing is Pecoraro did not involve the question of indigency. Here we've got this unusual factor that the defendant actually is indigent and is actually requesting the public defender as opposed to, you know, blocking, you know, a bar attorney or something and not. All right. So in other words, if it's, in your opinion, you're arguing if it's timely, then that should end the inquiry. It's timely and he's indigent. That's pretty much it? Yeah. Yes, that is. There is no consideration regarding whether or not this will thwart the administration of justice, the effective administration of justice. And if he is not asking for something that is totally unreasonable in terms of which attorney, then yes. Then the inquiry, if he qualifies for appointment of counsel, then the counsel should be appointed. In your opinion, the record was unequivocal that this defendant wanted to fire this attorney? Yes. Yes. He said at, I believe, every opportunity he could. And he did have his family out trying to come up with the funds to hire a replacement attorney and then did say he would take the public defender rather than continue with Mr. Fulton. And then, of course, at the end of the case, he actually, the court, ironically, actually finds him indigent, appoints my agency to represent him on his appeal in my case, and then appoints the public defender in the stead of Mr. Fulton to continue in case number 3755. So I don't think there can be any question as to whether or not he wanted the public defender. Do you remember any preliminary cases that dealt with this issue precisely? I could not find any. I could not find any cases that dealt with the indigency element to it. Your argument on standard of review? My standard of review position is I would concede that if this was a case that involved the court having made findings of fact regarding things, something like that the defendant was trying to hire an attorney that he couldn't afford or more likely that this was just to delay the proceedings, you know, just before the effective administration of justice. If there was that kind of fact finding that went into this, then that portion of the court's decision would be subject to the abuse of discretion standard rather than the de novo. However, our position in this case is that we are presenting a question of law, which is whether the court violated the defendant's constitutional right to counsel of choice when it rejected his request for the public defender on what we say is an illegal ground, which was simply because the defendant's family had already paid for an attorney that the defendant no longer wanted. And none of those facts are in dispute. So we believe this court should be able to review this de novo. Although I'll maintain alternatively that even under the lesser standard of review, I believe there is no question but that the court's reason for replacing counsel, for refusing to replace counsel with the public defender was improper and unreasonable and contrary to all the principles that we cite in our brief. And so therefore would most certainly be an abuse of discretion. Thank you. You'll have time on rebuttal. Thank you. Mr. Hoffman. Mr. Court, counsel, I am Jay Hoffman of the Illinois Appellate Prosecutor's Office, and it's my pleasure to represent the state before this honorable court in this case today. To go over some of the questions that were asked earlier, I checked my notes, and I don't see anything that says explicitly that Mr. Fulton was hired, but I don't think there was any denial about that. There was actually an earlier attorney who was hired and got out very early at the first appearance, even before arraignment, Mr. Fulton came in. I don't think there's any doubt that he was hired. Also, as I've laid out and counsel now seems to agree, although there is nothing on the record with regard to the payment agreement, from the comments of the fact that counsel did not say, well, I'm not getting paid, and the comments of the trial judge saying you have counsel who's been paid, it appears that he was paid through the post-trial motions, that he was paid through that time. That, of course, is crucial to my argument, or important to my second argument, as you know from reading the brief. With regard to a pre-sentence investigation, actually on 11-1606, before the first of at least two, I think perhaps three, 402 conferences involving this case and the companion case, the prosecutor asked that to Record 35 that a PSI be prepared pre-402 so that they could have full discussions on that. Now, I didn't have time to check and see, but I believe that's what happened, that PSI was prepared and used in those 402 conferences. I would disagree with counsel with regard to her characterization of the trial judge clearly being concerned only about public funds. I don't think that there's any mention. I don't recall any mention of the trial judge saying, okay, well, this is an instance where I just don't want to pay for this. I don't want to use public funds. In fact, the only time the trial judge really indicates exactly why he kept on Mr. Fulton, except that through all he says, well, he's done a good job for you just because you disagreed, which, of course, is the law. It doesn't mean you get to fire him. At the conclusion, he says, well, when counsel is allowed to withdraw, says, well, yes, you can withdraw now. The reason that I kept you in was because you had been in the case from the beginning, which is, of course, one of the factors to be considered whether or not a trial judge abuses his discretion in deciding whether a defendant can discharge and hire a different counsel. But often when that happens, the discharge and hiring, there is a delay occasioned. Is it likely that a delay would have been occasioned in this case based upon the other case and other factors? Well, it could be because there was, I will tell you that there was an initial 402 conference. There was another 402 conference they had after conviction in this case, and the trial judge was, quite frankly, appalled that that deal wasn't snatched up. He said, well, you know, if the state made a really reasonable deal, especially after conviction, it may have been a third 402. So it could have been that it would have went on. Well, with regard to this specific case, as I understand, the defendant brought this up in the context of after there was a conviction, there were post-trial proceedings pending. At that point, the defendant mentions that he wants to discharge counsel and seek a court-appointed attorney. It is in the situation we were talking about in the morning of trial, the defendant now announces that he wants new counsel to inevitably delay the proceedings, and, in fact, the trial judge here continued to allow him to retain other private counsel or look into that. So, really, where was the delay that would ensue on the sentencing here? Well, there was delay because you have to compile these things. First of all, just as a matter of record, the first two hearings, there was not a request for the public defender. The first time he indicates that the, which I think was December 4th, December 6th perhaps, counsel says, well, my understanding is that my client wants to discharge me, and the prosecutor might seek the ability to look for another attorney. There was no mention of the public defender at that time, and the trial judge said, okay, well, I think he quizzed either that time or the next hearing the family, saying, you know, do you have funds? What can we do? He said, well, we can look into that. They went through two hearings like that. It was at the third hearing that the defendant said, well, we can't find any funds. I would like you to appoint a public defender. Now, to directly address your question, yeah, he seemed, the judge was very patient here, both before and, I mean, going through trial, and I've laid that out as one of the factors in here, that the defendant here seemed dilatory. Could it have gone on forever? I think so. I think you have to look at the fact, now, if this is the first time that the defendant had done anything, it's like dealing with a son or a daughter. You know, they do something wrong once, they say, okay, don't do that. They do it again, they say, okay, don't do that. After several times, you get tired of being delayed over these things. What I'm saying is, yes, it's possible that he would have pushed it off anyway, but that does not change the fact that there was a delay and that there wasn't a counsel there ready, willing, and able. So what was the court's stated rationale for denying him the right and conducting a hearing on indigent, sir? What was it? His stated rationale was, well, he said, you don't have, because you are indigent, and let me state this in the reply brief, defendant seems to think that I was arguing that the defendant was not indigent. I never did that. I think if you look at my, I think it's at page 8 of my brief, what I said was his argument that just because he's indigent he had to have different appointed counsel was wrong. The judge's stated rationale had to do with the fact, as I said at the very end, he concluded by saying the reason I kept you on, Mr. Fulton, was because you had done this trial. In other words, you know in and out. Now, that might also relate to a delay, because anyone else coming in is going to have to delay, look at the record, look at what happened before filing post-trial motions. But the court never stated that, did it? Oh, yes, it did. The court stated that? The court said I kept you on because you had done this from the beginning. Well, is that the equivalent of delay necessarily? Did the court say it would have delayed the proceedings if I appointed new counsel? He never said that, did he? No. I'm sorry, Your Honor. I thought you meant my first point. No. I am inferring that it's possible part of that was that there would be delay, but he never said, the judge never said, I kept you on and I'm keeping you on to avoid delay. But what the judge does say, apparently on January 15th, after the defendant says, Your Honor, would you appoint the public defender? No. As I said, I do not find any justification to discharge a private attorney who is effective. I cannot find that there is ineffective assistance and appoint the public defender, and here's Ms. Hamill's point, and expend the public's money because you want to discharge a fire counsel of your choice. When you said that, I apologize for misremembering. And so he does seem to be concerned with that issue and doesn't seem to be concerned with can he pay for his own attorney if there's a problem. And later, Mr. Fulton even says, you know, he's got a problem with my strategy and we can't work together. And they talk about being a magician and being an attorney. There never seems to be much discussion about can he afford another attorney, and that seems to be the problem here. Just because you can afford an attorney from point A to point B doesn't mean you can do it all the way to the end, does it? No, it doesn't mean as indicated here. So what inquiry should be made when something like this happens? I think the inquiry is the same inquiry that I've laid out that you would have when you are deciding whether a funded defendant can fire his attorney. And we know that there are factors for that. What the argument here is that an attorney who originally, I'm sorry, a client who originally hires an attorney and subsequently is unhappy with them and cannot then afford to hire someone else has a greater right than someone who has money. Because we know that someone who has money to hire another attorney cannot necessarily discharge. There are those four factors. But here they're saying, well, he's indigent so he automatically gets to discharge him. That turns the law on its head. I've cited the United States Supreme Court in Wheat v. U.S. to say the Sixth Amendment provides an effective advocate, not representation by a chosen counsel. But we don't even have any determination here, do we, that he's indigent? There appears to be an assumption that he's not. Oh, I don't think there's an assumption that he's not. I think that the trial judge recognizes not. Early on, as I said, the trial judge, they never asked, defendant never asked for appointed counsel. He said he wanted to get rid of this counsel because he disagreed with him. The trial judge, I think appropriately and under the law, said, well, that's not a sufficient reason. Again, I've cited Murray Morris v. Slatton for the Supreme Court's comment that the Sixth Amendment does not guarantee a meaningful relationship. Well, we're using it down in simplest terms. If this defendant had never retained private counsel or his family had never retained private counsel, clearly he would have, and he was indigent, he would have had a right to have the public defender represented, correct? Yes, but he would not have had the right to come in and say, I don't want that public defender, I want that public defender. And that's what they're asking for now. That's what I'm saying. They want more rights for someone who's indigent than someone who has money. Because we know that a person who has money and can hire another counsel cannot automatically come in and say, I want to discharge him because I'm not happy with him. But under the Constitution, a person has the right to counsel of choice. And it's a limited right, Your Honor, and I've laid out those factors. Well, it's a right to counsel of choice until we go into the area where counsel is appointed. Then you can't have defendants say, I don't want him, I don't want her, I don't want her, I don't want him. I understand that. But what you're saying then, your argument is that when this comes up in a private attorney context, that then a court must make an investigation under people versus friend and all those other cases as to whether or not counsel is ineffective, correct? That's what your argument is. Well, my argument is certainly up front. When you first hire counsel, you have a right to hire whomever you please. So let's get to the point where now I've got my retained counsel, I say he's ineffective. Now, you're saying that it's the court's duty then, just like with a public defender, to then inquire as to whether or not that attorney is effective or not. Because the court has to inquire in that context. I know it because I was reversed on it in people versus friend. So I know that. So what I'm saying is that then your argument is that that investigation must be undertaken as it relates to retained counsel in this context. In this context, I think it would be because what he's trying to do is make a choice of counsel. And, again, this is – I can understand – I seem to bring money in – but if you're saying that you're going to force someone to pay another attorney. But here you have – well, all I can say is I think those four factors apply. The judge, when, during the course of trial or shortly before trial, after proceedings have been going on, the – someone wishes to fire their attorney, these factors apply. The factors being whether the defendant's request is a guise to temporary thwart justice, the lack of evidence that new counsel is ready, willing, and able. And, again, I never said that – counsel seems to indicate I said that the public defender wasn't ready, willing, and able. I did not say that they weren't able and willing. What I said was they were not unconditionally ready to take place at that time. And, indeed, on this issue, I have to go back and say – Well, I understand that issue. I want to get back to this fundamental issue, at least in my mind, at this point in time. And that is that if you're saying that counsel – that the court in this particular circumstance should have conducted an inquiry as to whether or not counsel was ineffective based upon the claims of the defendant, two things come to mind. First of all, under Pecoraro and Shaw, the court can't do that. I mean, Pecoraro is very explicit. It says that the court has no part in this relationship. The court cannot undertake to dissolve this relationship. The court – the only two people that can affect the attorney-client relationship in a retained situation is the attorney and the client. And that's the first thing. The second thing that comes to mind is why should we then reverse this case because the court didn't conduct an inquiry into whether or not Fulton was effective? Oh, I think the court did conduct an inquiry. In what fashion did the court look at the defendant and say, tell me your claims of ineffectiveness? Now, there is one part in the record where the court looks to Fulton and says, what do you think? And Fulton says, well, we're disagreeing on trial tactics. But I don't know that that's an adequate inquiry when the defendant has never put forth in the record what he believes is the basis of his ineffectiveness claim. This is interesting because I think the defendant was saying, well, he didn't have to go into a crankle inquiry, which is kind of where you're going, because counsel didn't formally say that. Defendant takes the judge to task for performing that crankle inquiry. So I would say that, you know, the defendant admits that the judge went there. And all that the defendant said was, all that the defendant said was, I don't think he represented me as he ought to. I think the judge did look at that and properly so. And went through and said, well, this guy's been in from the beginning. I don't think he's been bad. I think you're wrong. I think he represented you very well. I think that inquiry was done, and I don't think there was an abuse of discretion by denying this. Now, just to sum up before I hope to get to the abuse, the key here is that the constitutional right is to representation. Now, in ancillary, a sub part of that is where you have someone who can't afford representation, we provide representation for that person. Here, defendant had representation throughout. There was simply no denial of the right to counsel. And there was no denial of the right to choice because we know you cannot choose appointed counsel. Those two factors crossing show that there was no error here. In addition to the fact, as I said, that the judge conducted a tranquil inquiry and specifically also went to another one, well, at least two other of these factors, saying Mr. Fulton's been in here from the beginning. And, indeed, at the early hearings, he said, Mr. Fulton said, well, do I need to be here at the next hearing? He says, yeah, until another counsel shows up, I want you here. So we look to the fact that there was not someone else there ready and willing to go forward. This is a hybrid case, and I agree. I did not find anything else directly on point. So this court is going to have to look at the juxtaposition of the different rules, of the overwhelming rule that you must be afforded counsel, of the subpart saying that you have the right to choice, limited right to choice, which can be affected by these factors, but that when we give you free counsel, you do not have the right to choice. The defendant here was simply not ever denied the right to be represented. Finally, indeed, for that – Do you want to say something else on your second point, did you say? Just the abuse before I sit down. All right. Give me a couple more minutes, please. The second point is, I'm sure the court is well aware, ties into that saying that because we don't know that there was more payment here, because it appears that there was not, he wasn't denied counsel. And he essentially had appointed counsel. I call it de facto appointed counsel here. And he doesn't get the right to choose his appointed counsel. With regard to the abuse, just summing up, because he was not denied a constitutional right, he was not denied his right to be represented. The defendant was not denied that right. The standard of review here is abuse. If there are no further questions, we ask this court to affirm the conviction and sentence of this case. Thank you, Your Honor. Thank you. Ms. Hamilton. I wanted just to address counsel's point that my argument somehow puts people with money in a less advantaged place than those without. That is not so. What this is, is looking at what Pecoraro says, is that in a situation where you have retained counsel, the defendant has made a contract with the attorney. They have a business relationship. And if they get to the point where they want to terminate it, or one of the two of them wants to terminate it, then they should be allowed to do so. The court should not be intervening in that contractual relationship. And that's one of the reasons why this crankled law. As long as it's timely. Yes, yes. As long as it doesn't thwart the effective administration of justice. And all that we are saying is that here the defendant had that sort of a relationship with Mr. Fulton. At least his family did on his behalf. He wanted to end it. And so he wanted another attorney. However, he had a very narrow choice. He could only pick appointed counsel, which he happened to qualify for because he was indigent. And so he picked the public defender. It's certainly true that he couldn't pick which public defender. We understand that. Our system is trying, I believe what our system is trying to do, is to make, bring people who have no money into some sort of parity with people who do. And we can't do that completely. We simply can't afford to give indigent people counsel by counsel of their choice, period, because it would cost millions probably in a lot of cases. And so what we do is we do the best we can. And that is that we make the public defender available to indigent people. And here the defendant had this narrow choice, but he made it. Well, but doesn't, I mean, Pecoraro says he must hire, if there is a dispute, if he challenges ineffectiveness of privately retained counsel, he must go out and hire another attorney. Yes. That's pretty specific language. It doesn't say he can ask for a public defender. It says he must go out and hire. Hire is, I think, a rather significant word. Well, in Shaw, I believe it is, the court, which is following Pecoraro, says that, you know, points out that the defendant had attempted to hire another attorney and says, you know, or if he couldn't afford another attorney at that point, he should have asked to have one appointed. And I think that, you know, it's dictum, but it is recognizing, what I'm saying, what we have here is that the public defender stands in the place of, you know, any attorney in the phone book for when a person is indigent. But we're still, I mean, a person with money at that point, if a person with money was in the same position that the defendant was in, he could have then fired Fulton and hired another attorney. And it's clear from this record that the court would have allowed him to do that. So there was no reason for the court not to allow him to have the public defender appointed based on this record. You know, again, it's imaginable that there could be practical reasons that would have to do with delay and cumbersomeness of the procedure. But that was not what was cited here. So for these reasons, oh, and I did want to say one other thing, and that is that indigent people, I mean, it's not like you get into a to death duty part relationship with your attorney during a prosecution. It's certainly the case that if you're indigent, your choices are limited. But you can go pro se. You do not have to stay with your attorney. And so it simply isn't the case that we have this very, very, you know, tied up forever thing once a person accepts counsel. So, thank you. Thank you for argument today, counsel. The matter will be taken under advisement, a decision made in due course. This court now.